IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| O2 MICRO INTERNATIONAL LIMITED, a Cayman Islands Corporation, | § § § | Case No. 2-03CV-007 TJW |
| | § | Judge:  Hon. T. John Ward |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| TAIWAN SUMIDA ELECTRONICS INC., a Taiwanese corporation, | § § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |

## JOINT PROPOSED JURY INSTRUCTIONS

**TABLE OF CONTENTS**

I.    PRE-TRIAL INSTRUCTIONS ....................................................................................1

      A.    Opening Instructions ....................................................................................1

      B.    The Nature of the Action and the Parties ....................................................3

      C.    The United States Patent ..............................................................................4

            1.    The Patent System, Generally ..........................................................4

            2.    The Parts Of A Patent ......................................................................6

            3.    The Significance Of The Patent Claims ...........................................7

            4.    How A Patent Is Obtained ................................................................8

      D.    Issues to be Decided .....................................................................................9

            1.    Burden of Proof ................................................................................9

            2.    Direct Infringement -- CONTESTED ............................................11

            3.    Indirect Infringement .....................................................................13

            4.    Damages ..........................................................................................14

            5.    TSE's Contentions .........................................................................15

      E.    Construction of the Claims ........................................................................17

      F.    Duties of Jurors ..........................................................................................19

      G.    Evidence for a Limited Purpose .................................................................20

      H.    Ruling on Objections ..................................................................................21

      I.    Credibility of Witnesses .............................................................................22

      J.    Expert Witnesses ........................................................................................23

II.   INSTRUCTIONS DURING TRIAL .......................................................................24

      A.    Cautionary Instruction--First Recess .........................................................24

      B.    Bench Conferences and Recesses ...............................................................25

      C.    Stipulations Of Fact ...................................................................................26

      D.    Deposition Testimony .................................................................................30

III.  FINAL INSTRUCTIONS .......................................................................................31

DM_US\8244655.v1

A.     Introduction: Duty of Court and Jury ...................................................31

B.     Plaintiff's Claims And Defendant's Defenses ..................................32

C.     Claim Interpretation ........................................................................33

D.     Burden of Proof................................................................................36

E.     Determining Direct Infringement ....................................................37

     1.     Literal Infringement ............................................................37

     2.     Infringement Under the Doctrine of Equivalents –
          CONTESTED ......................................................................39

     3.     Infringement of Dependent Claims......................................41

F.     Inducing Patent Infringement ..........................................................42

G.     Contributory Infringement ...............................................................43

H.     Willful Infringement ........................................................................44

I.     Validity ............................................................................................46

     1.     Prior Art ..............................................................................47

     2.     Prior Art – Date of Invention ..............................................48

     3.     Prior Art -- Prior Invention .................................................50

     4.     Anticipation by Prior Art .....................................................52

     5.     Obviousness ........................................................................54

     6.     Written Description..............................................................57

     7.     Definiteness ........................................................................58

IV.     DAMAGES.................................................................................................59

     1.     Notice Requirement .............................................................60

     2.     Reasonable Royalty .............................................................61

V.     CLOSING INSTRUCTIONS .....................................................................63

A.     Duty to Deliberate ...........................................................................63

B.     Return of Verdict .............................................................................64

Plaintiff O2 Micro International Limited ("O2 Micro") and defendant Taiwan

Sumida Electronics, Inc. ("TSE") hereby submit the follow proposed jury instructions for

the Court's consideration.  These proposed instructions include instructions on all issues

currently pleaded by the parties.  Any disputes or objections are noted with each

corresponding instruction.  The parties anticipate that the stipulated facts in Section II.C.

("Stipulations of Fact") will be conformed to the stipulated facts set forth in the final

Pretrial Order.


DATED:  August 23, 2005                    Respectfully submitted,


                                    By:   /s/ Otis W. Carroll by permission Duane H. Mathiowetz
                                        Otis W. Carroll — Attorney-In-Charge
                                        (State Bar No. 03895700)
                                        Ireland, Carroll & Kelley, P.C.
                                        6101 South Broadway, Suite 500
                                        P.O. Box 7879
                                        Tyler, TX 75711
                                        Telephone:  (903) 561-1600
                                        Facsimile:   (903) 561-1071
                                        Email:        fedserv@icklaw.com

                                        S. Calvin Capshaw (State Bar No. 03783900)
                                        Brown McCarroll LLP
                                        1127 Judson Road, Suite 220
                                        P.O. Box 3999
                                        Longview, Texas 75601-5157
                                        Telephone:  (903) 236-9800
                                        Facsimile:   (903) 236-8787
                                        Email:        ccapshaw@mailbmc.com

                                        Franklin Jones, Jr. (State Bar No. 00000055)
                                        Jones and Jones, Inc., P.C.
                                        201 West Houston Street
                                        P.O. Drawer 1249
                                        Marshall, TX  75671-1249
                                        Telephone:  (903) 938-4395
                                        Facsimile:   (903) 938-3360
                                        Email:        franklinj@millerfirm.com

Henry Bunsow (California Bar No. 60707)
K.T. Cherian (California Bar No. 133967)
Duane H. Mathiowetz (California Bar No. 111831)
Howrey Simon Arnold & White, LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone:  (415) 848-4900
Facsimile:  (415) 848-4999
Email:      bunsowh@howrey.com
Email:      cheriank@howrey.com
Email:      mathiowetzd@howrey.com

Attorneys for Plaintiff
O2 MICRO INTERNATIONAL LIMITED

DATED:  August 23, 2005          Respectfully submitted,

By:   /s/ Philip J. McCabe

Eric M. Albritton
Albritton Law Firm
P.O. Box 2649
Longview, Texas 75606
Tel:    903-757-8449
Fax:    903-758-7397
ema@emafirm.com

Nathan Lane, III, Esq.
Joseph A. Meckes, Esq.
Squire, Sanders & Dempsey L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111
Tel:    415-954-0200
Fax:    415-393-9887
nlane@ssd.com
jmeckes@ssd.com

Philip J. McCabe, Esq.
Ronald E. Prass, Jr., Esq.
Kenyon & Kenyon
RiverPark Towers
333 W. San Carlos Street, Suite 600
San Jose, CA  95110
Tel:    408-975-7500
Fax:    408-975-7501
pmccabe@kenyon.com
rprass@kenyon.com

## I.    PRE-TRIAL INSTRUCTIONS

### A.    Opening Instructions

You have now been sworn as the jury to try this case.  As the jury, you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure.  From time to time during the trial and at the end of trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement.  Opening statements are intended to assist you in understanding the evidence.  What the lawyers say is not evidence.

The party who brings a lawsuit is called the Plaintiff.  In this action, the Plaintiff is O2 Micro International Limited, who will be referred to as "O2 Micro."  The party against whom this suit is brought is called the Defendant.  In this action, the Defendant is Taiwan Sumida Electronics Inc., who will be referred to as "TSE."

This is a case of alleged patent infringement.

After the opening statements, O2 Micro will call witnesses and present evidence.  Then, TSE will have an opportunity to call witnesses and present evidence.  After the parties' main case is completed, O2 Micro may be permitted to present rebuttal evidence.  Then I will instruct you on the applicable law.  You will then retire to deliberate on a verdict.

Keep an open mind during the trial.  Do not decide any fact until you have heard all the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence.

If you would like to take notes during the trial, you may do so.  If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony.  Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes.  Do not be unduly influenced by the notes of other jurors.  A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.

Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits will be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case. If anyone should attempt to discuss the case or to approach you concerning the case, you should inform the Court immediately. Hold yourself completely apart from the people involved in the case – the parties, the witnesses, the attorneys and persons associated with them. It is important not only that you be fair and impartial, but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case. Do not learn anything about the cause from any other source. You are to be guided solely by what you see and hear in this trial.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence. I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.[1]

---

[1]	Modeled after *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instruction 1.1 (1999) (modified with respect to the facts of the case).

**B.     The Nature of the Action and the Parties**

This is a patent case.

This case involves two U.S. Patents, identified by their numbers as follows:  patent number 6,259,615, also known as by its last three digits as "the '615 patent," and patent number and 6,396,722, also known as "the '722 patent."  Collectively, these patents may be referred to as "the patents-in-suit."  These two patents generally relate to a power conversion circuit which converts DC power such as from a battery to high voltage AC power to light fluorescent lamps which are used to backlight liquid crystal displays used in laptop computers, desktop LCD monitors, displays in handheld devices and other consumer electronics.

O2 Micro, the Plaintiff in this case, contends that Defendant, TSE, is infringing the two patents-in-suit by selling and offering to sell DC-to-AC single stage, full bridge inverter modules which incorporate inverter controller integrated circuits manufactured by a third company, Monolithic Power Systems.  The inverter modules made by TSE are then used in consumer electronics products such as laptop computers, LCD desktop displays and other consumer products sold and/or used in the United States.

TSE denies that it is infringing, and contends the patents-in-suit are invalid as being either anticipated by or obvious in light of what is called "prior art," and for indefiniteness and lack of written description.[2]

---

[2]     Adopted from Opening Jury Instructions in *ACCO Brands v. ABA Locks Manufacturing Co., Ltd., et al.*, Case No. 2:02-CV-112(TJW) (April 2004).

## C. The United States Patent

### 1. The Patent System, Generally

Patents are issued by the United States Patent and Trademark Office, which is part of the United States Government. The United States Government is empowered by the United States Constitution to enact patent laws and issue patents to protect inventions. Inventions that are protectable by patents may be of products, compositions, or of methods for doing something or for using or making a product or composition.

The Constitutional purpose of the patent system is to help advance science and technology. The patent system achieves this purpose by granting to the owner of a patent the right, for the term of the patent, to exclude any other person from making, using, offering for sale or selling the invention covered by the patent anywhere in the United States, or for importing the invention from a foreign country into the United States.

A patent is granted for a set period of time, which, for the patents involved in this case, has not yet expired. Once a patent expires, the patent owner may not exclude anyone from making use of the invention claimed in the patent. The invention then becomes part of the "public domain," which means that anyone is free to use it.

During the term of the patent, however, if another person – without the patent owner's permission – makes, uses, offers to sell, sells or imports something that is covered by one or more claims in the patent, then that person is said to infringe the patent. The patent owner may enforce a patent against persons or companies believed to be infringers in a lawsuit in a federal court, such as in this case.

To be entitled to patent protection, an invention must be new, useful, and non-obvious. As I noted, a patent gives its owner the right to exclude other people from making, using, selling or offering for sale what is covered by the patent claims. Everyone, however, has the right to use existing knowledge and principles. A patent cannot remove from the public the ability to use what was known or obvious before the invention was made or patent protection sought. The granting of a patent by the Patent and Trademark Office, however, carries with it the presumption that the patent is valid. From the issuance

DM_US\8244655.v1

of a patent, it is presumed that its subject matter is new, useful, and constitutes and

advance that was not, at the time the invention was made, obvious to one of ordinary skill

in the art.[3]  A party challenging the patent may overcome that presumption.  It is your role

as the jury to determine whether the Defendant has overcome that presumption here.

---

[3]     Adopted from Opening Jury Instructions in *ACCO Brands v. ABA Locks Manufacturing Co., Ltd., et al.*, Case No. 2:02-CV-112(TJW) (April 2004).

DM_US\8244655.v1

## 2.     The Parts Of A Patent

A patent includes two basic parts – a written description of the invention, and the patent claims.  The written description, which may include drawings, is often referred to as the "specification" of the patent.

You have been provided with copies of the patents-in-suit.  Please refer to the '615 patent as I identify its different sections.

The cover page of the '615 patent provides identifying information, including the date the patent issued and the patent number along the top, as well as the inventors' names, the filing date, the assignee (which is O2 Micro), and a list of the prior art publications considered in the Patent Office when deciding to issue the patent.

The specification of the '615 patent begins with an abstract, found on the cover page.  The abstract is a brief statement about the subject matter of the invention.

Next are drawings, which appear as Figures 1-4 on the next 11 pages.  The drawings depict various aspects or features of the invention.  They are described in words later in the patent specification.

The written description of the invention appears next.  In this portion of the patent, each page is divided into two columns, which are numbered at the top of each page.  The lines on each page are also numbered.  The written description of the '615 patent begins at column 1, line 1, and continues to column 10, line 53.  It includes a background section, a summary of the invention, and a detailed description of the invention, including some specific examples.

The specification ends with numbered paragraphs called claims.  The claims may be divided into a number of parts, referred to as "claim limitations."  In the '615 patent, the claims begin at column 10, line 54, and continue to the end of the patent, at column 16, line 22.[4]

---

[4]     Adopted from Opening Jury Instructions in *ACCO Brands v. ABA Locks Manufacturing Co., Ltd., et al.*, Case No. 2:02-CV-112(TJW) (April 2004).

DM_US\8244655.v1

### 3. The Significance Of The Patent Claims

The claims of a patent are a main focus of a patent case, because the claims are what define the patent owner's rights under the law. That is, the claims define what the patent owner may exclude others from doing during the term of the patent.

The claims of a patent serve two purposes. First, they set out the boundaries of the invention covered by the patent. Second, they provide notice to the public of those boundaries. Thus, when a product is accused of infringing a patent, the patent claims are compared to the accused product to determine whether or not there is infringement. It is the claims of the patent that are infringed when patent infringement occurs. The claims are also at issue when the validity of a patent is challenged. In reaching your determinations with respect to infringement and validity, you must consider each claim separately.

You will be provided with this Court's construction of the meaning of certain terms in the asserted claims in this case. You must use these meanings that I give to you when you decide the issue of infringement.[5]

---

[5] Adopted from Opening Jury Instructions in *ACCO Brands v. ABA Locks Manufacturing Co., Ltd., et al.*, Case No. 2:02-CV-112(TJW) (April 2004).

### 4.     How A Patent Is Obtained

The U.S. Patent and Trademark Office is the agency of our government that examines patent applications and issues patents. When an applicant for a patent files a patent application with the Patent and Trademark Office, the application is assigned to a Patent Examiner. The Patent Examiner examines the application to determine whether the invention described in the patent application meets the requirements of the patent laws for patentable inventions.

In examining a patent application, the Patent Examiner makes a search in the Patent Office records for prior art pertinent to the claims of the patent application. The Patent Office records may or may not contain all of the prior art pertinent to the claims of the patent application. The prior art is defined by statute, and I will give you specific instructions after the close of evidence as to what constitutes prior art. But generally, it is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the effective date of the application.

The Patent Examiner advises the applicant of his or her findings in a communication called an "office action." The Examiner may "reject" the claims if he or she believes they do not meet the requirements for patentable inventions. The applicant may respond to the rejection with arguments to support the claims, and may sometimes make changes or amend the claims, or submit new claims. If the Examiner concludes that the legal requirements for a patent have all been satisfied, he or she "allows the claims" and the application issues as a patent. Additional patent applications may be filed in continuing this process, which are called "continuation applications."

The process from the filing of the patent application to the issuance of the patent is called "patent prosecution." The record of papers relating to the patent prosecution is referred to as the prosecution history or file history.[6]

---

[6]     Adopted from Opening Jury Instructions in *ACCO Brands v. ABA Locks Manufacturing Co., Ltd., et al.*, Case No. 2:02-CV-112(TJW) (April 2004).

**D.      Issues to be Decided**

I will now give you some information about the issues that will be presented to you at this trial, as well as a short overview of the applicable law.  At the close of the trial, you will be given more specific instructions that you must follow in reaching your verdict.  You will also be given a verdict form and questions that you must answer in providing your verdict.

In this case, O2 Micro contends that TSE infringes claims 1, 2, 15-18, 29, 35, 39 and 40 of the '615 patent and claims 1, 2, 9, 12, 14 and 18 of the '722 patent, that such infringement was and is willful, and that O2 Micro is entitled to damages to compensate it for the infringement.  TSE denies that it infringes any of the claims of the '615 or the '722 patents, and contends that these claims are invalid.

**1.      Burden of Proof**

In any legal action, facts must be proved by a required standard of evidence, known the "burden of proof."  In a patent case such as this, there are two different burdens of proof that are used.  The first is called "preponderance of the evidence."  The second is called "clear and convincing evidence."

O2 Micro must prove its claims of patent infringement by a preponderance of the evidence.  When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true.  Put in another way, if you were to put the evidence for and against the party who must prove the fact on the opposite sides of the scale, a preponderance of evidence requires that the scale tip at least somewhat toward the party who has the burden of proof.

O2 Micro's claim that TSE has willfully infringed the '615 and '722 patents requires a higher burden of proof – the clear and convincing standard.  TSE has the burden of proving its affirmative defenses of invalidity by this higher burden.  When a party has the burden of proof by clear and convincing evidence, it means that the evidence must produce in your minds a firm belief and conviction as to the matter sought to be established.  In other words, if you were to put the evidence for and against the party who

must prove the fact on opposite sides of a scale, clear and convincing evidence requires that the scale tip more heavily toward the party who has the burden of proof.

You may have heard of a burden of proof that is used in criminal cases called "beyond a reasonable doubt." That requirement is the highest burden of proof and is used only in criminal cases. It does not apply to this case, and you should, therefore, put it out of your mind.[7]

---

## 2.    Direct Infringement -- CONTESTED

[NOTE:  The parties disagree as to whether O2 Micro is entitled to assert infringement under the Doctrine of Equivalents.  O2 Micro contends that it is entitled to assert infringement under the Doctrine of Equivalents.  TSE objects to any instruction regarding the Doctrine of Equivalents and contends that O2 Micro is not entitled to assert infringement under the Doctrine of Equivalents.  TSE is filing a *motion in limine* to exclude evidence and arguments on the Doctrine of Equivalents.]

[***O2 Micro's Proposed Instruction, which includes the Doctrine of Equivalents:***]

O2 Micro contends that TSE infringes claims 1, 2, 9, 12, 14 and 18 of the '722 patent and claims 1, 2, 15-18, 29, 35, 39 and 40 of the '615 patent by TSE's use, sale or offer for sale in the United States of single stage full-bridge inverter modules which incorporate inverter controller integrated circuits manufactured by third party Monolithic Power Systems, referred to as MPS.  This is called direct infringement.

There are two ways in which a patent claim can be directly infringed.  First, a claim can be literally infringed.  Second, a claim can be infringed under what is called the "doctrine of equivalents."

To determine literal infringement, you must compare the accused products with each claim that O2 Micro asserts is infringed.  It will be my job to tell you what the patent claims mean.  You must follow my instructions as to the meaning of the patent claims.  To prove literal infringement, O2 Micro must prove that it is more probable than not that TSE's products contain each and every element of one or more of the claims of the '615 or '722 patents.  You must determine literal infringement with respect to each patent claim individually.

The second type of infringement is called infringement under the "doctrine of equivalents."  To prove infringement under the doctrine of equivalents, O2 Micro must prove that it is more probable than not that, for each claim limitation not literally found in TSE's product, the product contains an equivalent structure or performs an equivalent step.

In order to be equivalent, the differences between the missing claim limitation and TSE's structure or step must be insubstantial.

[***TSE's Proposed Instruction, which excludes the Doctrine of Equivalents:***]

O2 Micro contends that the TSE directly infringes claims 1, 2, 9, 12, 14 and 18 of the '722 patent and claims 1, 2, 15-18, 29, 35, 39 and 40 of the '615 patent by TSE's sale or offer for sale in the United States of single stage full-bridge inverter modules which incorporate inverter controller integrated circuits manufactured by third party Monolithic Power Systems, referred to as MPS.

To determine direct infringement, you must compare the accused products with each claim that O2 Micro asserts is infringed. It will be my job to tell you what the patent claims mean. You must follow my instructions as to the meaning of the patent claims. To prove infringement, O2 Micro must prove that it is more probable than not that TSE's products contain each and every element of one or more of the claims of the '615 and '722 patents. You must determine infringement with respect to each patent claim individually.

### 3. Indirect Infringement

O2 Micro also contends that TSE indirectly infringes the claims of the '615 and '722 patents by contributing to or encouraging others to directly infringe. There are two types of indirect infringement – contributory infringement and inducing infringement.

To prove contributory infringement of the '615 and '722 patents claims, O2 Micro must prove that it is more probable than not that TSE sold or supplied to another person a component or part that is a material part of the patented invention and is not suitable for other uses. O2 Micro must also prove that the other person infringed the '615 and '722 patents claims, and that TSE knew about the patent[8] and knew that the component or part was especially made for use in an infringing manner.[9]

To prove that TSE induced someone else to infringe the '615 and '722 patents claims, O2 Micro must prove that it is more probable than not that TSE had knowledge of the patent, that TSE encouraged or instructed another person to use a product in a manner that infringes, and that TSE knew or should have known that the encouragement or instructions would likely result in the other person doing that which you have found to be an infringement.

---

[8] *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004); *Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

[9] Adopted from Opening Jury Instructions in *ACCO Brands v. ABA Locks Manufacturing Co., Ltd., et al.*, Case No. 2:02-CV-112(TJW) (April 2004).

DM_US\8244655.v1

### 4.    Damages

O2 Micro claims that it has suffered damages as a result of TSE's infringement of the '722 and '615 patents by TSE's use, sale or offer to sell single stage, full bridge inverter modules.  O2 Micro claims that it is entitled to a reasonable royalty on those sales. Damages cannot be speculative.  O2 Micro must prove the damages it has suffered as a result of the TSE's alleged infringement by a preponderance of the evidence.  The fact that I am instructing you about damages now does not mean that O2 Micro is or is not entitled to recover damages.  I will explain to you further at the end of the trial how a reasonable royalty is determined.[10]

---

[10]    Adopted from Opening Jury Instructions in *ACCO Brands v. ABA Locks Manufacturing Co., Ltd., et al.*, Case No. 2:02-CV-112(TJW) (April 2004).

### 5.       TSE's Contentions

TSE denies that it infringes the claims of the '615 and '722 patents.  TSE also

contends that the asserted claims of the patents-in-suit are invalid.  Although the patents-

in-suit were granted by the U.S. Patent and Trademark Office, it is your job to determine

whether or not the legal requirements of patentability were met; that is, it is your job to

determine whether or not the patents-in suit are invalid.  I will now explain to you briefly

the legal requirements for each of the grounds on which the TSE relies to contend that the

asserted patent claims are invalid.  I will provide more details for each ground in my final

instructions.[11]

First, TSE contends that the invention covered by claims of the '615 and '722

patents are not new.  An invention that is not new is said to be "anticipated" by the prior

art.  In order to prove that a claim is anticipated by the prior art, TSE must prove by clear

and convincing evidence that each and every limitation of the claim is present in a single

item of prior art.[12]

Second, TSE contends that claims of the '615 and '722 patents are invalid for

obviousness.  A claim will be invalid, even if it is not anticipated by the prior art, if the

claimed invention would have been obvious to a person of ordinary skill in the field of the

invention at the time it was made.  The ordinary skilled person is a person of average

education and training in the field of the invention and is presumed to be aware of all of the

relevant prior art.  You will hear evidence about the skill and experience of such a skilled

person during the course of the trial.[13]

---

[11]     Modeled after *Federal Circuit Bar Association Model Patent Jury Instructions*, Instruction 3.2.1 (2001) (modified with respect to the facts of the case).

[12]     Modeled after *Federal Circuit Bar Association Model Patent Jury Instructions*, Instruction 3.2.2 (2001) (modified with respect to the facts of the case).

[13]     Modeled after *Federal Circuit Bar Association Model Patent Jury Instructions*, Instruction 3.2.3 (2001) (modified with respect to the facts of the case).

DM_US\8244655.v1

In addition, TSE contends that certain claims of the '615 and '722 patents are invalid because the patent specifications fail to contain a complete written description of the inventions. In order to prove that those claims are invalid for lack of a written description, TSE must prove by clear and convincing evidence that the patents do not contain a description of each and every limitation of those patent claims.

Finally, TSE contends that certain claims of the '615 and '722 patents are invalid because the claims are indefinite. Patent claims must be definite enough that a skilled person reading them knows what is covered by the claims, and what is not. TSE must prove that the '615 and '722 patents claims are indefinite by clear and convincing evidence.[14]

---

[14] Modeled after *Federal Circuit Bar Association Model Patent Jury Instructions*, Instruction 3.2.4 (2001) (modified with respect to the facts of the case).

**E.  Construction of the Claims**

I will instruct you now and at the end of the case about the meaning of some of the claim language.  You must use these meanings I give you when you decide the issues of infringement and validity.

In deciding whether or not an accused product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use them when you decide whether or not the patent is infringed, and whether or not the claims are invalid.

It may be helpful to refer to the copy of the '615 patent that you have been given as I discuss the claims at issue here.  The claims are at the end of the '615 patent, starting with column 10, line 54.

Patent claims may exist in two forms, referred to as independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  Thus it is not necessary to look at any other claim to determine what an independent claim covers.  Claim 1 of the '615 patent, for example, is an independent claim.

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim.  Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

For example, claim 2 of the '615 patent is a dependent claim.  It refers to claim 1. To determine what dependent claim 2 covers, the words of that claim and the words of claim 1 must be read together.

The beginning portion, or preamble, of the claims of the patents-in-suit use the word "comprising."  "Comprising" means "including" or "containing."  A claim that uses the word "comprising" or "comprises" is not limited to products having only the elements that are recited in the claim, but also covers products that add additional elements.

Let's take an example of a claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

I have now instructed you as to the types of claims at issue in this case. I will give you specific definitions of the claim terms at the end of the case.[15]

---

[15] Adopted from Opening Jury Instructions in *ACCO Brands v. ABA Locks Manufacturing Co., Ltd., et al.*, Case No. 2:02-CV-112(TJW) (April 2004).

### F. Duties of Jurors

Now that I have given you some background on the parties' contentions in this case, I will tell you about your role as jurors.

You have two duties as jurors. Your first duty is to decide the facts from the evidence in the case. That is your job and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear, or public opinion to influence you.

Nothing I say now, and nothing I may say or do during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.[16]

---

[16] Adopted from Opening Jury Instructions in *ACCO Brands v. ABA Locks Manufacturing Co., Ltd., et al.*, Case No. 2:02-CV-112(TJW) (April 2004).

DM_US\8244655.v1

## G.      Evidence for a Limited Purpose

During the course of this trial I may instruct you that I am admitting certain testimony and exhibits for a limited purpose. When I instruct you that evidence is admitted for a limited purpose, you must consider such evidence only for that specific limited purpose for which it was admitted.[17]

---

[17]     Modeled after, *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instruction 2.15 (1999).

### H.    Ruling on Objections

There are rules of evidence which control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence, which I told you to disregard.[18]

---

[18]    *Ninth Circuit Manual of Model Jury Instructions* (Civil), Instruction 1.6 (1997).

## I.     Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.      the opportunity and ability of the witness to see or hear or know the things testified to;

2.      the witness' memory;

3.      the witness' manner while testifying;

4.      the witness' interest in the outcome of the case and any bias or prejudice;

5.      whether other evidence contradicted the witness' testimony;

6.      the reasonableness of the witness' testimony in light of all the evidence; and

7.      any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.[19]

---

[19] *Ninth Circuit Manual of Model Jury Instructions* (Civil),  Instruction 1.7 (1997).

### J. Expert Witnesses

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – he is called an expert witness – is permitted to state his opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.[20]

It is now time for the parties to present their opening statements.

---

[20] *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions  2.19 (1999).

## II.    INSTRUCTIONS DURING TRIAL

### A.    Cautionary Instruction--First Recess

We are about to take our first break during the trial, and I want to remind you of the instruction I gave you earlier.  Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately.  Do not read or listen to any news reports of the trial.  Finally, you are reminded to keep an open mind until all the evidence has been received and you have heard the arguments of counsel, the instructions of the court, and the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to the marshal to give to me.

I will not repeat these admonitions each time we recess or adjourn, but keep them in mind throughout the trial.[21]

---

[21]    *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 2.1 (1999).

**B.      Bench Conferences and Recesses**

At times during the trial it may be necessary for me to talk with the lawyers here at the bench out of your hearing, or by calling a recess.  We meet because often during the trial something comes up that doesn't involve the jury.  I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.[22]

---

[22] *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 1.1 and 2.7 (1999).

## C. Stipulations Of Fact

[NOTE: The fact stipulations herein will be conformed to the final version of stipulated facts listed in the Joint Pretrial Order.]

The parties have agreed or stipulated to certain facts. This means that both sides agree that this is a fact. You should therefore treat these facts as having been proved:

1.      Plaintiff, O2 Micro International Limited, is a corporation duly organized and existing under the laws of the Cayman Islands having its principal place of business in George Town, Grand Cayman, Cayman Islands.

2.      Defendant Taiwan Sumida Electronics, Inc. is a corporation duly organized and existing under the laws of the Republic of China, with its principal place of business in Taipei, Taiwan, R.O.C.

3.      Plaintiff is the owner by assignment of United States Patent No. 6,259,615 ("the '615 patent"), filed November 9, 1999 and issued July 10, 2001, and Plaintiff continues to hold all rights and interest in the '615 patent.

4.      The provisional application for the '615 patent was filed on July 22, 1999.

5.      Plaintiff is the owner by assignment of United States Patent No. 6,396,722 ("the '722 patent") filed May 7, 2001 and issued May 28, 2002, and Plaintiff continues to hold all rights and interest in the '722 patent.

6.      The '722 patent is a continuation of the '615 patent.


With respect to Plaintiff's claim of infringement, the parties have agreed or stipulated to the following facts:

7.      TSE's inverter modules are incorporated into liquid crystal display panels such as those used in notebook computers.

8.      TSE inverter modules based on the MP1010, MP1011 and MP1015 families of inverter chips incorporate a full bridge DC-to-AC inverter.

9.      TSE inverter modules based on the MP1010, MP1011 and MP1015 families of inverter chips can be coupled to an input DC voltage source.

DM_US\8244655.v1

10.      TSE inverter modules based on the MP1010, MP1011 and MP1015 families of inverter chips incorporate a transformer having a primary side and a secondary side.

11.      TSE inverter modules based on the MP1010, MP1011 and MP1015 families of inverter chips can control the operation of a cold cathode fluorescent lamp.

12.      TSE inverter modules based on the MP1010, MP1011 and MP1015 families of inverter chips can couple a load to the secondary side of a transformer.

13.      TSE inverter modules based on the MP1010, MP1011 and MP1015 families of inverter chips can controllably deliver power to a load.

14.      TSE inverter modules based on the MP1010, MP1011 and MP1015 families of inverter chips incorporate a full bridge circuit comprising two pairs of switches that can alternately couple an input DC voltage source to the primary side of a transformer.

15.      TSE inverter modules based on the MP1010, MP1011 and MP1015 families of inverter chips can couple an input DC voltage source to the primary side of a transformer to create an AC voltage in the secondary side of the transformer.

16.      TSE inverter modules based on the MP1010, MP1011 and MP1015 families of inverter chips incorporate a resonant tank circuit.

17.      TSE inverter modules based on the MP1010, MP1011 and MP1015 families of inverter chips incorporate a pulse generator for generating a pulse.

18.      TSE inverter modules based on the MP1010, MP1011 and MP1015 families of inverter chips incorporate a pulse generator for generating a pulse for controlling one or more switches in a full bridge.

19.      TSE inverter modules based on the MP1010, MP1011 and MP1015 families of inverter chips can provide a feedback signal indicative of current being supplied to a load.

20.      TSE inverter modules based on the MP1010, MP1011 and MP1015 families of inverter chips electrically couple the pins of the inverter chip to a transformer in the same way shown in reference diagrams (entitled, for example, "typical application circuit" or "reference design") in the data sheet(s) of the inverter chip provided by Monolithic Power Systems, Inc. to TSE.

With respect to Defendant's claims that the '615 and '722 patents are invalid, the parties have agreed or stipulated to the following facts:

21.     The U.S. patent application that matured into U.S. Patent No. 6,114,814 to Shannon, et al. ("the '814 patent") was filed on December 11, 1998 and the '814 patent issued on September 5, 2000.

22.     The U.S. patent application that matured into U.S. Patent No. 5,923,129 to Henry ("the '129 patent") was filed on March 13, 1998 and the '129 patent issued on July 13, 1999.

23.     The provisional application for the '129 patent was filed on March 14, 1997.

24.     The U.S. patent application that matured into U.S. Patent No. 5,615,093 ("the '093 patent") was filed on August 5, 1994 and the '093 patent issued on March 25, 1997.

25.     The U.S. patent application that matured into U.S. Patent No. 5,270,620 to Basch ("the '620 patent") was filed on June 25, 1991 and the '620 patent issued on December 14, 1993.

26.     The '814 patent discloses a full bridge DC-to-AC inverter.

27.     The '814 patent discloses an input DC voltage source.

28.     The '814 patent discloses a transformer having a primary side and a secondary side.

29.     The '814 patent discloses a load coupled to the secondary side of the transformer.

30.     The '814 patent discloses a full bridge circuit comprising two pairs of switches that can alternately couple an input DC voltage source to the primary side of a transformer.

31.     The '814 patent discloses a pulse generator for generating a pulse.

32.     The '814 patent discloses a pulse generator for generating a pulse for controlling one or more switches in a full bridge.

33.     The '129 patent discloses a full bridge DC-to-AC inverter.

34.     The '129 patent discloses an input DC voltage source.

35.     The '129 patent discloses a transformer having a primary side and a secondary side.

36. The '129 patent discloses a load coupled to the secondary side of the transformer.

37. The '129 patent discloses a full bridge circuit comprising two pairs of switches that can alternately couple an input DC voltage source to the primary side of a transformer.

38. The '129 patent discloses a pulse generator for generating a pulse.

39. The '129 patent discloses a pulse generator for generating a pulse for controlling one or more switches in a full bridge.

40. O2 Micro International Limited does not manufacture any products covered by the '615 or '722 patent.[23][24]

---

[23] The parties disagree on the inclusion of this stipulated fact as stated, and will either amend the language or remove the stipulated fact prior to trial.

[24] Modeled on *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 2.3 (1999).

DM_US\8244655.v1

## D. Deposition Testimony

Certain testimony will be presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be shown or read to you. This deposition testimony is entitled to the same consideration as if the witness had been present and had testified from the witness stand in court.[25]

If the testimony is read, do not place any significance on the behavior or tone of voice of any person reading the questions or answers.[26]

---

[25] Modeled on *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 2.23 (1999).

[26] Modeled on *Ninth Circuit Manual of Model Jury Instructions* (Civil), Instruction 2.6 (1997).

## III.    FINAL INSTRUCTIONS

### A.    Introduction:  Duty of Court and Jury

You have heard the evidence presented by the parties to this suit and the argument of the respective attorneys in support of their position.  It is now my duty to give you the charge in this case.  It will be an oral charge and is given in an effort to assist you in your deliberation in deciding the issues, which you must decide in order to reach a fair and impartial verdict in this case.  Perhaps this function of the court is the most important one the Court performs in the trial of a case, so I ask you to pay close attention to my remarks.

You will remember that at the beginning of this trial I gave you some general instructions and definitions.  Rather than repeat them all, I ask you to recall them now in deciding the facts and issues, which you are to decide.  As I instructed you at the beginning of the trial, you are the exclusive judges of the facts, the credibility of the evidence and the weight to be given to the testimony of the witnesses.

You are to perform your duty without bias or prejudice to any party.  The law does not permit jurors to be governed by sympathy or prejudice.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.  The Court and the parties expect that you will carefully and impartially consider all of the evidence, follow the law as I will give it to you, and reach a just verdict.[27]

I will now briefly review the contentions of the parties and give you some additional instructions and definitions that will guide you in deciding the issues or facts that you must resolve in this case.

---

[27]    Modeled on *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 3.1, 2.13 (1999).

### B.     Plaintiff's Claims And Defendant's Defenses

The Plaintiff, O2 Micro, alleges that Defendant, TSE, infringes claims 1, 2, 15, 16, 17, 18, 29, 35, 39 and 40 of the '615 patent and claims 1, 2, 9, 12, 14 and 18 of the '722 patent.  O2 Micro also alleges that TSE contributorily infringes and induces infringement.  In addition, O2 Micro alleges that TSE's infringement is willful.  O2 Micro seeks damages in the form of a reasonable royalty to compensate it for the alleged infringement.

TSE denies the Plaintiff's claims.  TSE contends that its single-stage, full bridge inverter modules do not infringe the asserted claims of either the '615 or '722 patents.  TSE further contends that the asserted claims of the '615 and '722 patents are invalid.

I will now give you instructions and definitions to help you in answering the questions you will receive when you begin your deliberations:

DM_US\8244655.v1

## C. Claim Interpretation[28]

To decide the questions of infringement and validity, you must first understand what the claims of the patent cover, that is, what they prevent anyone else from doing. This is called "claim interpretation."

It is my duty under the law to interpret what the patent claims mean. I have made my determination and I will instruct you accordingly. You must apply the meaning I give the patent claims to your decisions on infringement and your decision on validity. I will now instruct you how those words are to be construed and understood when deciding the issues of infringement and validity in this case.[29]

1. "A flow-through switch" means a switch which passes a selected voltage signal to its output node.

2. "Said pulse signal" means first pulse signal and the second pulse signal.

3. "Predetermined" means determined beforehand.

4. "Generate" means to bring into existence.

5. "Threshold" means the value of current, voltage or other quantity at which something happens.

6. "Predetermined threshold" means the value of current, voltage or other quality determined beforehand at which something happens.

7. "A feedback signal indicative of power being supplied to the load" and "said feedback signal" means an electrical signal that can be used to determine current through the load.

---

[28] For purposes of preserving its rights on appeal, TSE maintains its objection to the interpretation of the claim terms "predetermined" (and those terms incorporating "predetermined"), "threshold" (and those terms incorporating "threshold"), "first pulse signal" (and those terms incorporating "first pulse signal") and "second pulse signal" (and those terms incorporating "second pulse signal"). TSE contends that these terms should be construed as set forth in its claim construction briefs and as it presented at the claim construction hearing in this matter.

[29] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001); *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001); *SciMed Life Systems, Inc. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001); *AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001).

DM_US\8244655.v1

8. "First pulse signal" means in time domain, a first voltage or current waveform having two different amplitudes and a transition between the two amplitudes having a certain rate of rise and a certain rate of fall. The "second pulse signal" and the "first pulse signal" are two discrete signals, but they can be part of the same pulse train or generated from different pulse trains.

9. "Second pulse signal" means in time domain, a second voltage or current waveform having two different amplitudes and a transition between the two amplitudes having a certain rate of rise and a certain rate of fall. The "second pulse signal" and the "first pulse signal" are two discrete signals, but they can be part of the same pulse train or generated from different pulse trains.

10. "Second signal pulse signal" means second pulse signal. The definition of second pulse signal is the same as I read to you before.

11. "Controlling the conduction state of said second plurality of switches" means controlling the amount of overlap time in the conduction state of both switches in the plurality of switches. "Conduction state" means the mode of switch, either on or off. "Controlling" means that it is the amount of overlap time in the conduction state of both switches in the plurality of switches that is being controlled.

12. "Only if said feedback is above a predetermined threshold" means the second pulse signal controls the conduction state of the second plurality of switches only if the feedback signal is above a predetermined threshold.

13. "Predetermined pulse width" means a pulse width determined beforehand.

14. "Only if said feedback signal exceeds such threshold signal" means the first pulse signal controls the conduction state of the first pair of transistors, and that the second pulse signal controls the conduction state of the second pair of transistors only if the feedback signal is above a predetermined threshold.

15. "Pulse generator" means an instrumentality for producing a pulse signal.

16. "A predetermined minimum overlap" means a minimum overlap determined beforehand.

17.    "Said second pulse signal having a first state which overlaps said first pulse signal to deliver an amount of power to said load determined by said feedback signal, and a second state which overlaps the first signal with a predetermined minimum overlap to deliver a predetermined minimum power to the load" means in a first state, or mode, the second pulse signal overlaps the first pulse signal to deliver an amount of power to the load determined by the feedback signal; in a second state, or mode, the second pulse signal overlaps the first pulse signal by a predetermined minimum amount to deliver a predetermined minimum power to the load.

18.    "DC signal" means a signal whose polarity does not vary with time.

19.    In the context of the claim term "Said second pulse signal having a phase overlap with said first pulse signal to deliver power to said load only if said feedback signal is above a predetermined threshold," the second pulse signal operates to control the conduction state of the switch plurality by controlling the conduction state of one switch in the plurality only when the feedback signal is above a predetermined threshold

20.    "If said feedback signal is below said predetermined threshold, said feedback loop generating said second pulse signal to have a minimum phase overlap with said first pulse signal to reduce power delivered to said load to a predetermined minimum amount" means if the feedback signal is below the predetermined threshold, a second pulse signal is brought into existence which overlaps the first pulse signal by a minimum amount to deliver a predetermined minimum power to the load.

DM_US\8244655.v1

**D.      Burden of Proof**

As I explained in my opening instructions at the beginning of the trial, in any legal action, facts must be proved by a required standard of evidence, known as the "burden of proof." I will review with you again the standards of proof that apply to a patent case such as this. There are two different burdens of proof that are used, depending upon the particular issue to be decided. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true. Put in another way, if you were to put the evidence for and against the party who must prove the fact on the opposite sides of the scale, a preponderance of evidence requires that the scale tip at least somewhat toward the party who has the burden of proof.

When a party has the burden of proof by clear and convincing evidence, it means that the evidence must produce in your minds a firm belief and conviction as to the matter sought to be established. In other words, if you were to put the evidence for and against the party who must prove the fact on opposite sides of a scale, clear and convincing evidence requires that the scale tip more heavily toward the party who has the burden of proof.

As I mentioned before, you may have heard of a burden of proof that is used in criminal cases called "beyond a reasonable doubt." That requirement is the highest burden of proof and is used only in criminal cases. It does not apply to this case, and you should, therefore, put it out of your mind.

For each issue that you must decide, I will instruct you as to the burden of proof that will apply.

[SOURCE – adapted from preliminary instruction]

### E. Determining Direct Infringement

#### 1. Literal Infringement

Once the patent is issued, the owner of the patent has a right to exclude others from making, using or selling the patented invention throughout the United States for a term of 20 years. Thus, infringement occurs when a person, without the owner's permission, makes, uses or sells the patented invention anywhere in the United States while the patent is in force. This is known as "direct" infringement. To determine whether there is an infringement you must compare the allegedly infringing product with the scope of the patent claims as I have defined them for you. You should not compare the Plaintiff's commercial embodiments of its invention to the allegedly infringing product to determine whether there is an infringement.

The Plaintiff may prove its claim of direct infringement by demonstrating that the Defendant's product literally infringes a claim contained in the patent, and that Defendant made, used or sold the product within the United States. In order for you to find that the Defendant's product literally infringes a claim of the Plaintiff's patents, you must find that each and every element of the patented claim is found in the Defendant's product. If Defendant's product omits even a single element recited in a claim, then you must find that Defendant has not infringed that claim. In making your determination, you must consider each claim separately. Not all of the claims of a patent must be infringed before a patent is infringed. The Plaintiff need only establish by a preponderance of the evidence that one claim is infringed.

If you find that each and every element of a patented claim is found in TSE's product, and that TSE made, used or sold the product within the United States, then the product infringes the claim, even if the product may be more or less efficient or may include additional features or functions not found in the claims.[30]

---

[30] Modeled on *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 9.1 (Literal Infringement) (1999).

DM_US\8244655.v1

O2 Micro need not prove that TSE had the intent to literally infringe the patent or that it knew that its acts infringed the patent.  Good faith is not a defense to a claim of patent infringement.[31]

---

[31]    35 U.S.C. § 271(1); *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 478 (1974); *Filmways Pictures, Inc. v. Marks Polarized Corp.*, 552 F. Supp. 863, 868 (S.D.N.Y. 1982).

DM_US\8244655.v1

## 2.  Infringement Under the Doctrine of Equivalents – CONTESTED

[NOTE:  The parties disagree as to whether O2 Micro is entitled to assert infringement under the Doctrine of Equivalents.  O2 Micro contends that it is entitled to assert infringement under the Doctrine of Equivalents.  TSE contends that O2 Micro is not entitled to assert infringement under the Doctrine of Equivalents, and is filing a *motion in limine* to exclude evidence and arguments on the DOE.  TSE therefore objects to this proposed instruction in its entirety.]

If you find that TSE products do not literally infringe any claim of the O2 Micro's patents, then you must determine whether their products infringe under the doctrine of equivalents.

Under the doctrine of equivalents, you may find that the accused product infringes a patented claim if the plaintiff proves by a preponderance of the evidence that the accused product contains elements identical or equivalent to each claimed element of the patented invention.[32]  The focus is on individual elements of the claim, not on the invention as a whole.  To find infringement, you must find that there are no substantial differences between the patented product and the allegedly infringing product.  In order to make a finding under the doctrine of equivalents, you may consider whether the elements of the TSE's products perform substantially the same function in substantially the same way to produce substantially the same result when compared to the claimed elements of O2 Micro's patents.[33]

In making your determination, you should review the evidence from the perspective of a person of ordinary skill in the art.  The test is objective, that is, whether, at the time of the claimed infringement, a person of ordinary skill in the art would have

---

[32]   Adopted from *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 9.1 (Doctrine of Equivalents) (1999); *Warner-Jenkins Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607-610 (1950).

[33]   *Hilton Davis*, 520 U.S. at 40.

considered the differences insubstantial.  On the issue of equivalence, you may consider evidence of whether persons skilled in the art considered the accused element and the claimed element interchangeable at the time of the alleged infringement.  O2 Micro need not prove that TSE had the intent to infringe O2 Micro's patent under the doctrine of equivalents or that they knew that their device infringed the patent.

In your deliberations you should consider the issue of literal infringement first, if you find that TSE's product does not literally infringe a particular claim, you should then consider whether it infringes that claim under the doctrine of equivalents.  On the other hand, if you determine that TSE's product literally infringes a particular claim, you should then move on to the next claim allegedly infringed by the accused product without considering the doctrine of equivalents.  If you find that O2 Micro has failed to prove by a preponderance of the evidence that TSE infringed any of the claims listed above, directly or indirectly, either literally or under the doctrine of equivalents, you must find for TSE.[34]

---

[34]    Adopted from *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 9.1 (Doctrine of Equivalents) (1999) (modified to reflect the names of the parties).

### 3. Infringement of Dependent Claims

My instructions on infringement so far have related to independent claims. Of the claims in suit, claims 2, 9 and 14 of the '722 patent and claims 2, 15, 16, 17, 29, 39 and 40 of the '615 patent are dependent claims. A dependent claim includes each of the limitations of the independent claim to which it refers, plus additional elements.

If you find that any one of the independent claims 1, 12 or 18 of the '722 patent has been infringed, you must separately determine whether asserted dependent claims corresponding to each has also been infringed. If you find that any one of independent claims 1, 12 or 18 is not infringed, then you must also find that the corresponding dependent claims of the '722 patent are not infringed.

If you find that any one of the independent claims 1, 18 or 35 of the '615 patent has been infringed, you must separately determine whether the corresponding dependent claims have also been infringed. If you find that any one of the independent claims 1, 18 or 35 are not infringed, then you must also find that the corresponding dependent claims of the '615 patent are not infringed.[35]

---

[35] Adopted from *Federal Circuit Bar Association Model Patent Jury Instructions*, Instruction 8.10 (2001) (modified with respect to facts of the case), citing *Jeneric/Pentron, Inc. v. Dillon Co.,* 205 F.3d 1377, 1383 (Fed. Cir. 2000); *Finnigan Corp. v. United States Int'l Trade Comm'n,* 180 F.3d 1354, 1364 (Fed. Cir. 1999); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,* 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1552-53 n.9 (Fed. Cir. 1989).

DM_US\8244655.v1

## F.        Inducing Patent Infringement

O2 Micro also asserts that TSE has induced infringement.  To show inducement, O2 Micro must prove by a preponderance of the evidence that someone has directly infringed the patent.  If there is no direct infringement by anyone, TSE has not induced infringement.  If you find that someone has directly infringed the asserted claims of the '615 and '722 patents, it is not necessary to show that TSE has directly infringed, if O2 Micro proves by a preponderance of the evidence that TSE actively and knowingly aided and abetted that direct infringement.  O2 Micro must show that TSE had knowledge of the patent, that TSE actually intended to cause the acts that constitute direct infringement and that TSE knew or should have known that its actions would induce actual infringement.

If you find that someone has directly infringed the asserted claims of the'615 and '722 patents and that TSE knew or should have known that its actions would induce direct infringement, you may find that TSE induced another to infringe O2 Micro's patent if it provided instructions and directions to perform the infringing act through labels, advertising or other sales methods.[36]

---

[36]    Modeled after *AIPLA Guide to Model Patent Jury Instructions,* Claim Construction and Infringement No. 6 (1999), citing 4 Donald S. Chisum, *Patents* § 17.04 (1992); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 909 F.2d 1464, (Fed. Cir. 1990); *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544 (Fed. Cir. 1990); *C.R. Bard, Inv. v. Advanced Cardiovascular Sys., Inc.,* 911 F.2d 670 (Fed. Cir. 1990).

DM_US\8244655.v1

### G.    Contributory Infringement

O2 Micro also asserts that TSE is liable for contributory infringement.  O2 Micro has the burden to prove contributory infringement by a preponderance of the evidence.  To establish contributory infringement by TSE, O2 Micro must first show that someone directly infringed the '615 and '722 patents; however, O2 Micro does not need to prove that TSE itself directly infringed.  If there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the patent, then contributory infringement exists if O2 Micro proves that:

(1)    TSE sold or supplied;

(2)    a material component of the patented invention that is not a staple article of commerce capable of substantial noninfringing use;

(3)    with knowledge of the patent[37] and knowledge that the component was especially made or adopted for use in an infringing product.

A "staple article of commerce capable of substantial noninfringing use" is something that has uses other than as a part or component of the patented product and that those other uses are not occasional, farfetched, impractical, experimental or hypothetical.[38]

---

[37]    *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004); *Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

[38]    Modeled after *AIPLA Guide to Model Patent Jury Instructions*, Claim Construction and Infringement No. 7 (1999), citing *Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*, 630 F. Supp. 463, 229 USPQ 255 (E.D. Pa. 1985), *aff'd in part, vacated in part, and remanded*, 803 F.2d 1170, 231 USPQ 297 (Fed. Cir. 1986); *In re Certain Molded-In Sandwich Panel Inserts*, 218 USPQ 832 (Ct. Int'l. Trade 1982), *aff'd*, 721 F.2d 1305 (1983); *Oxy Metal Indus. Corp. v. Quin-Tec, Inc.*, 216 USPQ 318, 324 (E.D. Mich. 1982); 4 Donald S. Chisum, *Patents* § 17.03[3], at n.6 (1992).

## H.    Willful Infringement[39]

O2 Micro claims that TSE infringed its patents willfully. Where a potential infringer has actual notice of another's patent rights, he has an affirmative duty of due care not to infringe. Thus, if you find that Defendant infringed the Plaintiff's patents, then you must further determine if this infringement was willful.[40] This determination will not affect the amount of damages, if any, that you assess. The purpose of your determination is to assist the Court in making decisions that it will have to make.[41]

O2 Micro must prove willfulness by clear and convincing evidence. This is a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard. O2 Micro may prove willful infringement if it shows that TSE (1) was aware of the Plaintiff's patent and (2) had no reasonable basis for reaching a good faith conclusion that its making, using or selling its device avoided infringing the patent. O2 Micro may also prove willful infringement by proving that TSE did not exercise due care to determine whether or not it was infringing the Plaintiff's patent once TSE had actual notice of the Plaintiff's patent. [42]

In considering whether TSE's infringement was willful, you should consider all of the circumstances and all of the evidence demonstrating TSE's intentions. No single factor alone requires a finding of willful or not willful infringement. The fact that you may determine that TSE was wrong and that an asserted patent is infringed does not mean that TSE's infringement was willful. All that is required to avoid a finding of willful

---

[39]    Modeled after *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 9.10 (1999) (modified to reflect the names of the parties).

[40]    AIPLA Model Patent Jury Instruction on Willful Infringement.

[41]    35 U.S.C. § 284.

[42]    *Hoechst Celanese Corp. v. BP Chem. Ltd.*, 78 F.3d 1575, 1583 (Fed. Cir. 1996).

DM_US\8244655.v1

infringement is that TSE had a good faith belief that it did not infringe or that the patent was invalid, and that TSE's belief was reasonable under all of the circumstances.[43]

A factor to consider in evaluating TSE's conduct is whether the TSE followed competent legal advice once TSE obtained notice of O2 Micro's patents. Competent legal advice means an opinion by counsel that is not simply conclusory but is based on a reasonable examination of the facts and the law pertaining to the validity and infringement issues. If you find that TSE received competent legal advice, you should then consider whether TSE actually relied upon and followed counsel's advice.[44] However, there is no requirement that TSE must have consulted with counsel, and you may not draw any adverse inferences from any failure or delay in seeking the advice of counsel.[45]

---

[43] Federal Circuit Bar Association Model Patent Jury Instructions, Instruction 9 (2001).

[44] *See The Johns Hopkins University v. Cellpro, Inc.*, 152 F.3d 1342, 1362-65 (Fed. Cir. 1998); *Amstead Industries, Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 181-82 (Fed. Cir. 1994); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828-30 (Fed. Cir. 1992); *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 734-45 (Fed. Cir. 1993).

[45] Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp., 383 F.3d 1337, 1345 (Fed. Cir. 2004).

DM_US\8244655.v1

## I.    Validity

TSE claims that O2 Micro's patents are not valid.  A patent issued by the United States Patent Office is presumed to be valid.  In order to rebut this presumption, TSE must establish by clear and convincing evidence that O2 Micro's patents or any claim in the patents are not valid.  Clear and convincing evidence is a more exacting standard than proof by a preponderance of the evidence, which only requires that the party's claim be more likely true than not true.  Nevertheless, the clear and convincing standard is not as high as the burden of proof applied in a criminal case, which is beyond a reasonable doubt.

TSE asserts that the patents are invalid on a number of grounds.  A valid patent must be novel and nonobvious.  It must also contain a complete written description, and the claims must be definite.  TSE contends that the asserted claims were not novel because they were anticipated by the prior art and that the claims were rendered obvious by the prior art.  TSE also contends that certain claims lack a complete written description and/or are indefinite.  If you find by clear and convincing evidence that the patents lack novelty, are obvious, fail to comply with the written description requirement, or are indefinite, then you should find the patents invalid and render a verdict for TSE.[46]

---

[46]    Modeled after *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 9.2 (1999) (modified to reflect the names of the parties); 35 U.S.C. § 272.

DM_US\8244655.v1

### 1.    Prior Art

Some of these instructions will refer to "prior art."  Prior art means technology and information that was publicly available before the date of the invention.  In considering prior art, you should consider prior art that is relevant to the particular problem the inventor faced.  Prior art includes (1) patents issued more than one year before the filing of the patent or before the date of the invention; (2) publications having a date more than one year before the filing date of the patent or before the date of the invention; (3) U.S. patents that have a filing date prior to the date of the invention of the subject matter in the patent; (4) inventions in public use or on sale in the United States more than one year before the filing date of the patent in issue; (5) inventions publicly known or used by others in the country before the date of the invention of the claimed subject matter in the patent; and (6) inventions made or built in this country by another person before the date of the invention of the claimed subject matter in the patent and not abandoned, suppressed or concealed.[47]

---

[47]    Modeled after *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 9.4 (1999).

## 2. Prior Art – Date of Invention[48]

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called the "date of invention". I will now explain to you how to determine this date. There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as "reduction to practice". An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose. Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a "constructive reduction to practice". Ordinarily, art dated before the application filing date is prior art to the patent claims.

There are, however, two circumstances under which art dated before the application filing date is not prior art (although these exceptions do not apply when the art is a patent or printed publication dated more than one year before the application filing date, or when the invention was on sale or in public use more than one year before the application filing date). The first circumstance occurs when the inventor on the patent reduced the invention to practice before the date of the art. Art dated after the reduction to practice is not prior art to the patent claims. The second circumstance under which art dated before the application filing date is not prior art occurs when the inventor conceived of the invention before the date of the prior art and exercised reasonable diligence from just before the date of the art up to the date of the inventor's reduction to practice. In that case, art dated after the conception date is not prior art to the patent claims. Remember, reduction to practice occurs either as of the filing of the patent application or when the invention was actually

---

48  *Federal Circuit Bar Association Model Patent Jury Instructions*, Instruction 10.6.1 (2001).

made and was shown to work for its intended purpose.  Reasonable diligence means that the inventor worked continuously on reducing the invention to practice.  Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of diligence.

DM_US\8244655.v1

### 3.     Prior Art -- Prior Invention[49]

An invention made by another person before the inventor on the patent made the invention is prior art to the patent claim, unless that other person abandoned, suppressed or concealed his or her invention.  As a general rule, the first person to reduce an invention to practice is said to be the first inventor.  An invention is reduced to practice either when a patent application is filed or when the invention is made and shown to work for its intended purpose.  Thus, if another person reduces to practice an invention before the inventor on the patent, then the reduction to practice by the other person will be prior art to the patent claims.

Let's consider an example. Mr. Smith has a patent on a table. He reduced his table to practice on April 1.  Ms. Jones invents the same table.  She built her table on March 1, one month before Mr. Smith reduced his table to practice.  Ms. Jones' invention of the table is prior art to Mr. Smith's patent claims because Ms. Jones reduced her table to practice one month before Mr. Smith's reduction to practice.

There is, however, an important exception to this general rule. Someone who was first to conceive of an invention but reduced it to practice after someone else will be the first inventor if he or she was the first to conceive of the invention and he or she exercised "reasonable diligence" in reducing the invention to practice from a time just before the other person's conception.  Conception of an invention occurs when the inventor has formed the idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for any further inventive effort.  Reasonable diligence means that the inventor worked continuously on reducing the invention to practice.  Interruptions necessitated by the everyday problems and obligations of the inventor or those working with him or her do not prevent a finding of diligence.

Let's change our example slightly.  Mr. Smith conceived of his table on February 1 and reduced it to practice on April 1.  Ms. Jones conceived of the table on January 1, one month

---

[49]  *Federal Circuit Bar Association Model Patent Jury Instructions*, Instruction 10.6.8 (2001).

before Mr. Smith's conception, and built it on May 1, one month after Mr. Smith's reduction to practice. If Ms. Jones was reasonably diligent in building the table from the time just before Mr. Smith's February 1 conception up to the time that she built the table on May 1, she is the first inventor of the table and her invention is prior art to Mr. Smith's patent claims. The final requirement for a prior invention to be prior art is that the prior inventor did not abandon, suppress or conceal his or her invention. Generally, an invention was not abandoned, suppressed or concealed if the invention was made public, sold or offered for sale, or otherwise used for a commercial purpose. The filing of a patent application that discloses the invention is evidence that the invention was not abandoned, suppressed or concealed.

DM_US\8244655.v1

### 4.    Anticipation by Prior Art

The patent laws of the United States require that an invention must be new for a person to be entitled to a patent.  TSE asserts that the patented claims at issue are invalid because they were not new-- that is, they lack novelty.  If an invention is not new, we say that it was "anticipated" by the prior art.  An invention that is "anticipated" by the prior art is not entitled to patent protection.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art.  You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation.  That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present.  Something is inherent in an item of prior art if it is necessarily present in the prior art or necessarily results from the practice of the prior art, and if a skilled person would understand that to be the case.

In this case, TSE contends that each of the claims of the '722 and '615 patents are invalid because they are anticipated by any one or more of the following prior art references:

U.S. Patent No. 5,923,129 to Henry ("Henry '129");

U.S. Patent No. 6,114,814 to Shannon *et al.* ("Shannon");

U.S. Patent No. 5,615,093 to Nalbant ("Nalbant");

U.S. Patent No. 5,270,620 to Basch *et al.* ("Basch");

Monolithic Power Systems' MP1010 inverter controller and modules incorporating the MP1010, along with MPS data sheets dated October 1998 and February 1999 (collectively, this will be referred to as the "MPS 1010 device").

If you find that TSE has offered clear and convincing evidence that any of the claims are anticipated, then you must find that those claims are invalid.[50]

---

[50] Adopted from *Federal Circuit Bar Association Model Patent Jury Instructions*, Instruction 10.8 (2001) (modified with respect to facts of the case).

### 5.    Obviousness[51]

TSE also claims that the patents are invalid because the inventions were obvious. For an invention to merit a patent, it must not have been obvious to other skilled people working in the same field looking at the same problem. Accordingly, the question you must answer is would the invention have been obvious to a person of ordinary skill in the relevant art at the time the invention was made. If it would have been obvious, the patent is not valid.[52]

In determining whether the patent is invalid because of obviousness, you must consider the scope and content of the prior art, the differences between the prior art and the claimed invention, and the level of ordinary skill in the art. In making these assessments, you must also consider other surrounding circumstances that are called secondary considerations. These include: (1) whether the invention was commercially successful; (2) whether the invention satisfied a long-felt need in the art; (3) whether others were unsuccessful in making the invention; (4) whether the invention was copied by others in the art; (5) whether the invention received praise from others in the art; and (6) whether the invention departed from other principles or accepted wisdom of the art. In order to determine that secondary considerations such as commercial success are evidence of non-obviousness, there must be a causal connection between the patented features of the invention and the commercial success of the device. If the commercial success is attributable to patented features, then it is evidence of non-obviousness. While these secondary considerations must be taken into account, you must consider all of the evidence related to obviousness before you reach a decision.[53]

---

[51]    Modeled after *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 9.5 (1999) (modified to reflect the names of the parties).

[52]    25 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S.1 (1966); *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.2d 1554, 1563-65 (Fed. Cir. 1997).

[53]    *United States Surgical Corp*, 103 F.2d at 1563-65.

TSE must show that the prior art taken as a whole suggests the obviousness of making the patented invention. In determining what if any differences exist between the prior art and the patented invention, you should consider the prior art as it appeared to a person of ordinary skill in the art at the time.[54] You cannot use hindsight to reconstruct any of the prior art devices.

That O2 Micro's invention incorporates or combines elements already known in the prior art does not render its patents invalid. A patent may be granted on a device that contains a combination of various elements that are well known in the prior art. O2 Micro claims that it invented the particular combination of elements for the first time in the device claimed in the patents.

In order to prove obviousness, TSE must prove by clear and convincing evidence that one of ordinary skill in the art at the time would have found in the prior art some teaching, suggestion or incentive to combine the prior art in the way the plaintiff did in its invention. To find obviousness, you must find not only that the prior art would teach one of ordinary skill to try the combination of known elements, but also that prior art would sufficiently direct such a person how to obtain the desired result.[55]

You have been instructed that in determining whether the invention was obvious you are to consider the level of ordinary skill in the art at the time the invention was made. In determining the level of ordinary skill in the art, you should consider the person of ordinary skill as one who is presumed to be aware of all pertinent prior art. The skill of the actual inventor is irrelevant, because inventors may possess something that distinguishes them from workers of ordinary skill in the art. In determining the level of ordinary skill in the art, you should consider such factors as the educational level of active workers in the field, the types of problems encountered in the art, the nature of prior art solutions to those

---

[54] *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1051-53 (Fed. Cir.), c*ert. denied*, 488 U.S. 825 (1988).

[55] *United States Surgical Corp*, 103 F.2d at 1564.

problems, prior art patents and publications, the activities of others, the sophistication of the technology involved, as well as the rapidity of innovation in the field.[56]

If you find that TSE has proved obviousness by the clear and convincing standard, then you must find that the claims are invalid.

---

[56] *United States Surgical Corp*, 103 F.2d at 1564.

DM_US\8244655.v1

## 6.     Written Description

A patent must contain a written description of the product claimed in the patent.  In order to satisfy the written description requirement, the patent must describe each and every limitation of a patent claim, although the exact words found in the claim need not be used.

TSE contends that each of the asserted claims of the '615 patent and of the '722 patent are invalid for lack of an adequate written description of the claimed invention.  If you find that TSE proved by clear and convincing evidence that '615 patent and the '722 patent do not contain a written description of the invention covered by any of these claims, then you must find that the claim is invalid.[57]

---

[57]   Adopted from *Federal Circuit Bar Association Model Patent Jury Instructions*, Instruction 10.2 (2001) (modified with respect to facts of the case), citing *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 285 F.3d 1013, 1018 (Fed. Cir. 2002); *Turbocare Div. Of Demag Delaval Turbomachinery Corp. v. General Elect. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001); *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345-46 (Fed. Cir. 2000); *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 996-1001 (Fed. Cir. 2000); *Sun Tiger Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1334 (Fed. Cir. 1999); *Tronzo v. Biomet Inc.*, 156 F.3d 1154, 1158-60 (Fed. Cir. 1998); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

DM_US\8244655.v1

## 7.        Definiteness

The patent laws have requirements for the way in which patent claims are written. Patents must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover. A person of ordinary skill is a person of average education and training in the field. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art and the description of the invention contained in the patent. A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the field of the invention of what the patent claims cover. Simply because claim language may not be precise does not automatically mean that the claim is indefinite. The claim language need only be as precise as the subject matter permits.

TSE contends that claims 39 and 40 of the '615 patent are invalid because the language of the claims is indefinite. If you find that TSE has proved by clear and convincing evidence that any claims of the '615 patent are indefinite because a person of ordinary skill in the art would not understand what is, and what is not, covered by the claims, you must then find that those claims are invalid.[58]

---

[58]  Adopted from *Federal Circuit Bar Association Model Patent Jury Instructions*, Instruction 10.5 (2001) (modified with respect to facts of the case), citing *LNP Eng'g Plastics, Inc.* v. *Miller Waste Mills, Inc.*, 275 F.3d 1347, 1357 (Fed. Cir. 2001); *S3 Inc.* v. *nVIDIA Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001); *Budde* v. *Harley-Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir. 2001); *Union Pac. Resources Co.* v. *Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001); *Solomon* v. *Kimberly-Clark Corp.*, 216 F.3d 1372, 1378-80 (Fed. Cir. 2000); *Atmel Corp.* v. *Info. Storage Devices, Inc.*, 198 F.3d 1374, 1378-82 (Fed. Cir. 1999); *Personalized Media Communications, L.L.C.* v. *Int'l Trade Comm'n*, 161 F.3d 696, 700 n.5, 705 (Fed. Cir. 1998); *In re Dossel*, 115 F.3d 942 (Fed. Cir. 1997); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1217 (Fed. Cir. 1995); *Eiselstein* v. *Frank*, 52 F.3d 1035, 1040- 41 (Fed. Cir. 1995); *In re Donaldson Co.*, 16 F.3d 1189 (Fed. Cir. 1994); *N. Am. Vaccine, Inc.* v. *Am. Cynamid Co.*, 7 F.3d 1571, 1579-80 (Fed. Cir. 1993); *W.L. Gore & Assoc., Inc.* v. *Garlock, Inc.*, 842 F.2d 1275, 1280 (Fed. Cir. 1988); *Uniroyal, Inc.* v. *Rudkin-Wiley Corp.*, 837 F.2d 1044, 1056 (Fed. Cir. 1988).

DM_US\8244655.v1

## IV.     DAMAGES

I will now instruct you as to the calculation of damages should you find that the Plaintiff has met its burden on any of its claims.

If you find that TSE has infringed any of the claims of O2 Micro's patents and that these claims are valid and enforceable, then you should consider the amount of money O2 Micro should receive as damages.  O2 Micro has the burden of proving by a preponderance of the evidence the amount of damages caused by the TSE's infringement.  Even though I am instructing you on how you should measure damages, this should not be taken to mean that I believe that TSE has infringed or that the patents are valid and enforceable.  These are issues for you to resolve under the instructions I have given you.  I am instructing you on damages only so that you will have guidance should you decide that O2 Micro is entitled to recover damages.[59]

Damages are only to compensate the Plaintiff, to put the Plaintiff into the position it would have been in if the Defendant had not infringed.  You may not add anything to the amount of damages to punish the Defendant, or to set an example; nor may you include damages that are speculative or that are based on guesswork.[60]

---

[59]     *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 9.7 (1999).

[60]     Adopted from *Federal Circuit Bar Association Model Patent Jury Instructions*, Instruction 12.1 (2001).

DM_US\8244655.v1

# 1.    Notice Requirement[61]

O2 Micro can recover damages for infringement that occurred only after it gave notice of its patent rights to TSE.  It is O2 Micro's burden to prove by a preponderance of the evidence that it gave notice to TSE.

O2 Micro can provide notice of its patent by telling TSE that TSE is infringing the '615 and '722 patents and to identify TSE's product that was infringing.  Merely giving notice of the patent's existence or ownership, without more, is not sufficient.  It is irrelevant whether TSE knew of the patents or knew of its own infringement.  The key inquiry is what steps O2 Micro took to provide notice, not the knowledge and understanding of TSE as to whether its products infringed the patent.  Notice by O2 Micro would be effective from the time it is given.

---

[61]    Adopted from *Federal Circuit Bar Association Model Patent Jury Instructions*, Instruction 12.1.1 (2001).

## 2.    Reasonable Royalty

O2 Micro is seeking damages in the form of a reasonable royalty.

A royalty is the amount of money a licensee pays to a patent owner for each article the licensee makes (or uses or sells) under the patent.  A reasonable royalty is the amount of money a willing patent owner and a willing prospective licensee would have agreed upon at the time of the infringement for a license to make the invention.  In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when the infringer first infringed the patent and the facts that existed at that time.  Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations.  Your focus should be on what the parties' expectations would have been had they entered negotiations for royalties at the time of the infringing activity.  The infringer's actual profits may or may not bear on the reasonableness of an award based on a reasonable royalty.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:  (1) whether the patent holder had an established royalty for the invention; in the absence of such a licensing history, any royalty arrangements that were generally used and recognized in the particular industry at that time; (2) the nature of the commercial relationship between the patent owner and the licensee such as whether they were competitors or whether their relationship was that of an inventor and a promoter; (3) the established profitability of the patented product, its commercial success and its popularity at the time; (4) whether the patent owner had an established policy of granting licenses or retaining the patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve his monopoly; (5) the size of the anticipated market for the invention at the time the infringement began; (6) the duration of the patent and of the license, as well as the terms and scope of the license, such as whether it is exclusive or nonexclusive or subject to territorial restrictions; (7) the rates paid by the licensee for the

DM_US\8244655.v1

use of other patents comparable to the plaintiff's patent; (8) whether the licensee's sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his nonpatented items; (9) the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results; (10) the extent to which the infringer used the invention and any evidence probative of the value of such use; (11) the portion of the profits in the particular business that are customarily attributable to the use of the invention or analogous inventions; (12) the portion of the profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks or significant features or improvements added by the infringer; (13) the opinion and testimony of qualified experts; (14) any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people.[62]

The determination of a reasonable royalty is based on what a willing licensor and licensee would bargain for at hypothetical negotiations on the date infringement, if any, started. There is no rule that a royalty must be less than the alleged infringer's net profit margin or that the royalty fee must be less than the price of the accused device, although these are factors which you should take into consideration.

---

[62] *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 9.8 (1999), citing *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-1110 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1583, 1554-55 (Fed. Cir. 1995); *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 318 F. Supp 1116, 1120 (S.D.N.Y. 1970), *aff'd*, 446 F.2d 295 (2d cir. 1971).

DM_US\8244655.v1

## V.     CLOSING INSTRUCTIONS

### A.        Duty to Deliberate

These instructions are given to you as a whole, and you are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.  You have heard all of the evidence in the case and you have heard the argument of counsel.  The Court has given you the charge in this case.  In a few moments you will retire to the jury room, select one of your members to act as foreperson, and begin performing the function for which you have been chosen and for which you have been empanelled, in accordance with the oath you took as jurors.  You will remember that at the beginning of the trial, the Court admonished you not to discuss the case with each other until it was submitted to you.

Now is the time for you to begin your discussion, and you certainly may express an opinion from the evidence that you have heard and use any reasonable means to persuade other members of the jury to your convictions and to your honest opinion.  You are to reach a verdict which speaks the truth, and which does justice to all parties without favor, bias or prejudice in any particular, either for or against any party to this lawsuit.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion if convinced it is erroneous.  But, do not surrender your honest conviction as to the weight or effect of the evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.[63]

---

[63]     Modeled after *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 2.11 and 3.1 (1999).

DM_US\8244655.v1

**B.    Return of Verdict**

The verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree thereto.  Your verdict must be unanimous.  As soon as you have reached a verdict, you will let this fact be known to the officer who will be waiting upon you and he will report to the Court.

Your verdict will be in the form of Questions for you to answer.  You will take these Questions to the jury room, and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form and then advise the Security Officer that you have reached a verdict.  During your deliberations you may have any of the exhibits which have been offered into evidence, and the Court will send them to you upon written request.  If you desire further instructions, your foreperson may make this known in writing, and the Court will try to comply with your wishes.  All communications with the Court must be in writing, but at no time should you indicate to the Court or to anyone else how the jury is divided in answering any particular Question.

Any notes that you have taken during this trial are only aides to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror concerning the testimony.

You may now retire to the jury room and begin your deliberations.[64]

---

[64]    Modeled after *United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions* (Civil Cases), Instructions 2.12, 2.21 and 3.1 (1999).