

# HOWREY LLP

525 Market Street
Suite 3600
San Francisco, CA 94105-2708
T 415.848.4900
F 415.848.4999
www.howrey.com

September 2, 2005

File 07119.0002.000000

Honorable T. John Ward
100 East Houston Street
Marshall, Texas 75760

    Re:    *O2 Micro International Ltd. v. Taiwan Sumida Electronics*

Your Honor:

    In Taiwan Sumida Electronics' ("TSE") letter to the Court on August 31, 2005, TSE encapsulates the assumptions underlying Dr. Cox's analysis as, "[s]ince the Taiwan market is a majority of the worldwide market, Dr. Cox concluded that Taiwan Sumida sales into the Taiwan market would likely follow the behavior of the worldwide market as a whole – including the distribution of notebook computers into the United States, as reflected in the IDC data." Judge Claudia Wilken rejected Dr. Cox's previous report for precisely making such bald assumptions and for providing no evidence in support thereof.

    Judge Wilken explained that Dr. Cox failed in two respects: first, for offering the percentage of portable computers sold in the U.S. by the top ten worldwide manufacturers, and second, for estimating the portion of O2 Micro's allegedly infringing products sold in the U.S. Because Dr. Cox failed to offer any "evidence of any relationship between the proportion of O2 Micro products sold in the U.S. and the proportion of laptops sold into the U.S.," Judge Wilken considered his report a "vague estimation" of the facts. *See* Attachment A (equating Dr. Cox's report to the evidence rejected in *Oiness v. Walgreen*, where instead of calculating actual sales, the inventor provided estimations).

    Here, Dr. Cox again provides no evidence of any relationship between the proportion of notebooks using TSE's infringing modules that are sold in the U.S. and the proportion of laptops that are sold into the U.S. by all the laptop manufacturers. TSE's attempt to differentiate Dr. Cox's previous report as being based on the top ten manufacturers and his current report as being based on all laptop manufacturers does not expunge Dr. Cox's failure to provide actual evidence for his presumptions. Nor does Dr. Cox evidence why using all laptop manufacturers makes his averaging methodology any less speculative.

    Moreover, estimating sales based on the averages of all laptop manufacturers ignores the facts of this case. Dr. Cox ignored thousands of pages of TSE's sales spreadsheets that identified key end-users of TSE's inverter modules, such as Dell. Dr. Cox further ignored evidence from TSE's documents that certain end-users, such as Apple, Hewlett-Packard and NEC, use very few of the infringing products at issue. Indeed, Dr. Cox made <u>no</u> attempt to adjust his generic average of all laptop manufacturers to reflect the facts – especially the fact that the <u>majority</u> of infringing inverters ultimately went to, or through, Dell.

AMSTERDAM   BRUSSELS   CHICAGO   HOUSTON   IRVINE   LONDON
LOS ANGELES   MENLO PARK   NORTHERN VIRGINIA   PARIS   SAN FRANCISCO   WASHINGTON, DC

> Q. ...Did you make any attempt to make specific changes to your methodology in order to overcome the objections that were made to your analysis in the Oakland case?
> A. Not consciously, no.

Cox Depo. April 19, 2005 at 93. As a result, Dr. Cox's analysis overlooks at least a million infringing inverter modules sold in the U.S. during the relevant time period.

Lastly, TSE gratuitously offers as a last resort to stipulate to Mr. Davis's royalty base and allowing Dr. Cox to "apply his revenue per unit and royalty rate" thereto. TSE's offers nothing more than a veiled Pandora's box. Dr. Cox's "revenue per unit" or "average price" is based on TSE's "worldwide sales" in keeping with his "worldwide averages," not the specific infringing units at issue. TSE's offer to stipulate is simply a backdoor attempt to rewrite Dr. Cox's admittedly flawed report. Dr. Cox's analysis is entirely based on flawed methodologies, and he should be wholly excluded.

Very truly yours,

Duane H. Mathiowetz

# ATTACHMENT "A"

```
                                                    FILED
                                                  MAY 28 2004
                                              RICHARD W. WIEKING
                                            CLERK, U.S. DISTRICT COURT
                                          NORTHERN DISTRICT OF CALIFORNIA
                                                    OAKLAND
```

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| O2 MICRO INTERNATIONAL LIMITED, a Cayman Islands corporation, <br><br> Plaintiff, <br><br> v. <br><br> MONOLITHIC POWER SYSTEMS, INC., a California Corporation, and DOES 1 to 10, <br><br> Defendant. | Nos. <br> C 00-4071 CW (EDL) <br> and <br> C 01-3995 CW <br><br> ORDER RESOLVING CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| MONOLITHIC POWER SYSTEMS, INC., a California Corporation, <br><br> Counterclaimant, <br><br> v. <br><br> O2 MICRO INTERNATIONAL LIMITED, a Cayman Islands corporation, and O2 MICRO, INC., a California corporation, <br><br> Counterdefendants. | |

The current motions arise from two related cases. In C 00-4071, Plaintiff O2 Micro International Limited (O2 Micro) brought claims against Monolithic Power Systems, Inc. (MPS) for declaratory judgment of non-infringement and/or invalidity of U.S. Patent No.

knowing they would be brought into the United States. Lin Dep. at 629:23-634:21.[1] As discussed above, there is a dispute of fact whether the inverters infringe the patents at issue. Therefore, the Court DENIES 02 Micro's motion for summary judgment that it is not liable for contributory infringement.[2]

D. Damages

02 Micro contends that MPS cannot satisfy its burden to show damages with reasonable probability. An expert report on damages may not rely on unreasonable inferences or resort to "mere speculation or guess." Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1576 (Fed. Cir. 1983). MPS' expert, Dr. Cox, estimates damages in two steps. Mewes Dec. Ex. C. First, Cox offers the percentage of portable computers sold in the United States by the top ten worldwide manufacturers. Second, Cox uses this percentage to estimate the portion of 02 Micro's allegedly infringing products sold in the United States. However, MPS offers no evidence of any relationship between the proportion of 02 Micro products sold into the United States and the proportion of laptops sold into the United States by the top ten laptop computer

---

[1] 02 Micro contends that contributory infringement is not at issue because MPS failed to identify facts relating to a theory of contributory infringement in an interrogatory response. Mewes Dec. Ex. A. However, MPS has not conceded, as 02 Micro contends, that it does not proceed on a theory of contributory infringement.

[2] 02 Micro asserts that it does not infringe under 35 U.S.C. § 271(f), which defines infringement as supplying a component from the United States for combination outside of the United States. It appears that none of the accused products were supplied from the United States. Thus, § 271(f) is not at issue. In addition, MPS does not assert a product by process theory of infringement. Thus, § 271(g) is not at issue.

14

1  manufacturers. The report apparently assumes, but does not offer
2  any evidence, that the top ten worldwide laptop manufacturers all
3  use O2 Micro controllers in all of their laptops.
4      MPS' expert report is speculative in the same way as the
5  evidence rejected by the court in Oiness v. Walgreen Co., 88 F.3d
6  1025 (Fed. Cir. 1996), where instead of calculating actual sales of
7  a patented device, the inventor measured the amount of floor space
8  devoted to the product in three stores, multiplied that square
9  footage by the total number of stores, and relied on a report
10 regarding the "vague concept" of sales per square foot. Id. at
11 1029. In rejecting this theory of damages, the court found, "This
12 evidence adds vague estimation and gross extrapolation to
13 unsupported presumption." Id.  The instant case presents similar
14 facts. Accordingly, the Court GRANTS O2 Micro's motion for summary
15 adjudication that MPS lacks evidence of damages.
16 III. Interference Claim
17     O2 Micro asserts its interference claim based on the expected
18 testimony of Calvin Han, an employee of one of O2 Micro's
19 customers. Yung-Lin Lin, Executive Vice President of O2 Micro,
20 stated in his declaration that MPS told Han that it had already won
21 the lawsuit between it and O2 Micro, and that O2 Micro was
22 conducting a public offering to pay the judgment owed to MPS. Lin
23 Interference Dec. ¶ 3. However, Lin's testimony is inadmissible
24 hearsay. At the hearing on this motion, O2 Micro conceded that
25 because it had no direct testimony of Calvin Han, it had no
26 evidence to support this claim and would not pursue it.
27 Accordingly, the Court GRANTS MPS' motion for summary judgment on
28                                15