IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | |
|---|---|
| O2 MICRO INTERNATIONAL LIMITED, a Cayman Islands Corporation,<br><br>    Plaintiff,<br>v.<br><br>(1) SUMIDA CORPORATION, a Japanese corporation, and (2) TAIWAN SUMIDA ELECTRONICS INC., a Taiwanese corporation,<br><br>    Defendants. | Case No. 2-03CV-007 TJW<br><br>Judge:  Hon. T. John Ward |

**REPLY BRIEF OF O2 MICRO INTERNATIONAL LIMITED'S MOTION TO ENHANCE DAMAGES AND MOTION TO DECLARE THE CASE EXCEPTIONAL**

Plaintiff O2 Micro International Limited ("O2 Micro") submits the following reply memorandum in support of its Motion to Enhance Damages and Motion to Declare the Case Exceptional.

I.  **REPLY RE MOTION TO ENHANCE DAMAGES**

Defendant argues that the damages should not be enhanced because the jury's finding of willfulness, by itself, is an insufficient basis for doing so, and because the *Read* factors do not support enhancement. Willfulness requires a showing that the totality of circumstances evince the egregious conduct that constitutes willful infringement. *nCube Corp. v. SeaChange Int'l, Inc.*, 2006 U.S. App. LEXIS 631 at *14 (Fed. Cir. 2006). Here the totality of circumstances, viewed in light of the *Read* factors, supports the doubling of damages. Although TSE would surely like to rewrite the facts, it cannot.

TSE first argues that there is no evidence that it copied O2 Micro's inverter controller chips. However, copying <u>by TSE</u> was never an issue at trial, since TSE does not sell inverter controllers. Rather, TSE's state of mind was at issue, and its intent was reflected in the uncontroverted evidence that its employees provided information to O2 Micro's main competitor, MPS. TSE tries to diffuse the harmful nature of its conduct by arguing that Simon Tsai, its former employee who went to work at MPS, "had no responsibility for the 1999 study of the OZ960." and therefore could not have had information to pass on to MPS. But his testimony of "no <u>responsibility</u>" is not the same as having no <u>knowledge</u>, as show by his subsequent testimony. Moreover, by nature of his prior association with TSE, Mr. Tsai was able to get the OZ960 board from TSE after he began working at MPS.

The jury was presented evidence—by TSE—that the MPS module was cheaper than the OZ960, thus providing incentive for TSE to betray O2 Micro. Dalson Wu of TSE testified that when all components (necessary to make the OZ960 functionally equivalent to the MP1010) are included, the MPS part was less expensive. Trial Tr. 11/15/05 (morning) at 76:22-77:17. Moreover, Dr. Lin's testimony contradicted TSE's contention at pp. 9-10 in its Opposition that it had no alternative but to use the MPS chip. Dr. Lin, who was/is in charge of the inverter controller product group at O2 Micro, testified that TSE never advised him that the O2 Micro controller chip was not acceptable for use in products made for Dell or Samsung, and that such information would

have been "a big deal" given their respective positions in the market.  Trial Tr., 11/14/2005 (morning) at 95:18-96:16.  Moreover, even accepting as true Mr. Wu's testimony that O2 Micro's OZ960 was unacceptable for a <u>given</u> Dell project, he did not testify, nor is there evidence, that O2 Micro's device could not be used for <u>all other</u> Dell projects or for all other projects supported by TSE.  The jury likely, and reasonably, concluded that TSE intended to shut O2 Micro out of the market for Dell and Samsung products in exchange for cheaper chips from MPS.

TSE also argues, contrary to the record, that there is no evidence that O2 Micro's board was confidential when Mr. Tsai received it.  However, Dr. Yun-Lin Lin testified unequivocally that TSE was not authorized by O2 Micro to give the demo boards containing the OZ960 chip to MPS.  See Trial Tr., 11/14/05 (morning) at 96:25-98:9.

With respect to the second *Read* factor, TSE contends that its conduct was not willful because it "engaged in an appropriate investigation, consulting both its supplier, MPS, and outside patent counsel, Mr. Magen."  TSE Opposition at pp. 4-5.  First, the fact that TSE received assurances <u>from MPS</u> that the MPS inverter controllers did not infringe the '722 patent can hardly be deemed reliable information from an independent and unbiased source, insofar as MPS was embroiled in its own infringement litigation with O2 Micro at the time.  More importantly, the jury heard evidence that the Magen opinion was anything but objective and competent.  *See Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 15722-73 (Fed.Cir 1996)("The competency requirement applies to both the qualifications of the person giving the opinion and to the content of the opinion itself….To reasonably rely on an opinion, it must be authoritative, not just conclusory, and objective.")

On cross-examination, Mr. Magen admitted that he had no technical discussions with anyone at TSE.  His sole basis for information, other than documents, was Mr. Moyer of MPS.  Trial Tr., 11/16/2005 (morning) at p. 130:24-131.19.  Moreover, Mr. Magen made no attempt to conduct a new or further investigation beyond what he had done for MPS relating to infringement of the '615 patent—he simply slapped a new cover letter on the old opinion and sent it to TSE.  He did no further analysis of the claims as they might pertain to the TSE devices, or the prior art.  The jury could reasonably conclude from the evidence that the Magen opinion was simply a "protective device," and not obtained and relied on in good faith.  *See Amsted Industries Inc. v. Buckeye Steel Castins Co.*, 28 U.S.P.Q.2d 1352, 1359 (N.D. Ill. 1993), *aff'd in part, vacated in part and*

2

*remanded*, 24 F.3d 178 (Fed. Cir. 1994)("It was for the jury to determine whether [the infringer] actually relied in good faith on the opinion of counsel or whether obtaining counsel's opinion was merely a protective device….Where [a party's] state of mind is at issue, the determination is ultimately one of credibility.")

With respect to the third *Read* factor, TSE minimizes the extent of its litigation misconduct, particularly its frivolous jurisdictional dispute and its failure to produce "end-user" or "buyer" information in a timely manner. With respect to the former, this Court has already rendered its opinion that TSE's conduct in the jurisdictional phase amounted to "burying its head in the sand." March 19, 2004 Order on Sumida Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.) The Court also noted TSE's frivolous responses to written discovery during the jurisdictional dispute. With respect to the failure to timely produce "end-user" information, it is not simply, as TSE would have this Court believe, a case of "no harm, no foul" because O2 Micro was able to piece together the same information from the million documents that TSE produced. O2 Micro had to spend hundreds of hours and tens of thousands of dollars to recreate the same information that could have been and should have been produced at the outset.

Nor do the arguments offered by TSE with respect to the remaining *Read* factors support denial of enhanced damages. TSE argues, for example, that this was a close case in that it prevailed on its motion for summary judgment of non-infringement of the '615 patent and the Court carried TSE's motion for summary judgment of the '722 patent. But the '615 patent was not adjudicated by this Court on its merits. Rather, the Court ordered that it was bound by the judgment of non-infringement entered in Oakland, and did not decide infringement on the technical issues. As this Court is aware, Judge Wilken did not reach the technical issues of infringement either, but instead ruled that O2 Micro had failed to present evidence in its expert report consistent with the non-infringement theory set out in its preliminary infringement contentions, and therefore could not refute MPS's non-infringement argument.

TSE contends that at worst it could have acted willfully only from late 2002 until it became aware of Judge Wilken's summary judgment ruling on non-infringement, in part because "O2 Micro stipulated at trial that no willful infringement occurred after TSE became aware of the ruling. TSE Opposition at pp. 8-9. That argument is specious and misleading. As a preliminary

3

matter, O2 Micro objects to the declaration of Dalson Wu offered in support of that proposition as being improper evidence in that it is outside the trial record. Substantively, O2 Micro responds that TSE misconstrues the stipulation: O2 merely offered to stipulate that the willfulness period ended <u>upon entry of judgment</u>, which was October 2005, just prior to trial.

But irrespective of the purported stipulation, it was unreasonable for TSE to rely on non-infringement of the '615 patent as a defense to infringement of the '722 patent. <u>Claims 1, 2, 9 and 18 of the '722 patent do not have the same "only if" limitation relied upon by MPS to show non-infringement of the '615 patent.</u>[1] The '615 finding is simply irrelevant to those claims of the '722 patent.

TSE has failed to demonstrate that the *Read* factors lend support to its position that although the jury found willfulness, the Court should not enhance damages. Accordingly, O2 Micro respectfully requests the Court to double the damages to $4,000,000.

## II. REPLY RE MOTION TO DECLARE THE CASE EXCEPTIONAL

O2 Micro further moved that this case be declared "exceptional" and that it be awarded attorneys' fees in the amount $3,000,000. None of TSE's arguments in opposition have merit.

First, as set out in Section I, each of the *Read* factors supports, rather than cautions against, imposition of attorneys fees. In particular, TSE's filing of a frivolous jurisdictional motion which delayed the litigation by a year is the type of litigation misconduct which warrants the sanction of attorney's fees. *Mazurka v. C.R. Bard, Inc.*, 79 F.3d 1572, 1580 (Fed. Cir. 1996) ("Bad faith litigation, willful infringement, or inequitable conduct is among the circumstances which may make a case exceptional.")

Second, the jury's determination that TSE's infringement was willful is by itself sufficient basis for the award of fees. "While a finding of willful infringement does not require a finding that a case is exceptional, [cite omitted], our cases uniformly indicate that the willfulness of the

---

[1] TSE's other arguments also fail. TSE claims that it is involved in a dispute with MPS over indemnification, and therefore "defendant's size and financial condition" is a neutral factor. However, TSE offers no evidentiary basis to support its conclusion. Finally, TSE argues that because O2 Micro did not address the ninth *Read* factor, it is conceding that such factor supports its position. O2 Micro does not so concede. At most, the ninth factor, concealment of misconduct, is neutral.

infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees to the prevailing patent owner. *Golight, Inc. v. Wal-Mart Stores, Inc.,* 355 F.3d 1327, 1340 (Fed. Cir. 2004), *citing Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853. F.2d 1557, 1567 (Fed. Cir. 1998).

TSE also argues that since it "prevailed" on the '615 patent, an award of attorneys fees would be improper. TSE Opposition at p. 12. However, under § 285, attorneys fees can be awarded to a "prevailing party." While the award and amount of attorney's fees remains discretionary with the Court, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 & n. 7 (1933). *See also Beckman Instruments Inc. v. LKB Produkter AB*, 892 F. 2d 1547, 1553-54 (Fed. Cir 1989)("When infringement is found to be willful, the policy behind § 285 of discouraging infringement might justify imposing all of the patent owner's attorney fees on the infringer, even if the infringer prevailed as to some of the claims in suit"). Here, O2 Micro has clearly succeeded in its efforts to halt infringement of its '722 patent. Therefore, whether the '615 was held not infringed on procedural grounds or otherwise is irrelevant. O2 Micro is the prevailing party and entitled to its fees ($3,000,000 per agreement of the parties).

Finally, TSE contends that O2 Micro has provided insufficient supporting details of its fees. However, the parties agreed that $3,000,000 would be an appropriate fee if this Court found the case exceptional. In fact, it is significantly less than the total fees incurred by O2 Micro. As noted above, as the prevailing party, O2 Micro is entitled to recover its entire fees (up to the stipulated maximum), irrespective of the fact TSE "prevailed" on the '615 patent. To the extent that the Court determines that further details are required, O2 Micro is prepared to submit detailed billing records to demonstrate the full amount of fees incurred, and that the fees are reasonable.

### III. CONCLUSION

For the foregoing reasons, O2 Micro again requests that it be awarded $4,000,000 in damages and $3,000,000 in attorneys fees.

DATED:  February 24, 2006        Respectfully submitted,

By:  /s/ Otis W. Carroll by permission Duane H. Mathiowetz
Otis W. Carroll — Attorney-In-Charge
(State Bar No. 03895700)
Ireland, Carroll & Kelley, P.C.
6101 South Broadway, Suite 500
P.O. Box 7879
Tyler, TX 75711
Telephone:  (903) 561-1600
Facsimile:   (903) 561-1071
Email:         fedserv@icklaw.com

S. Calvin Capshaw (State Bar No. 03783900)
Brown McCarroll LLP
1127 Judson Road, Suite 220
P.O. Box 3999
Longview, Texas 75601-5157
Telephone:  (903) 236-9800
Facsimile:   (903) 236-8787
Email:         ccapshaw@mailbmc.com

Franklin Jones, Jr. (State Bar No. 00000055)
Jones and Jones, Inc., P.C.
201 West Houston Street
P.O. Drawer 1249
Marshall, TX  75671-1249
Telephone:  (903) 938-4395
Facsimile:   (903) 938-3360
Email:         maizieh@millerfirm.com

K.T. Cherian (California Bar No. 133967)
Duane H. Mathiowetz (California Bar No. 111831)
Rick Chang (California Bar No. 209515)
Howrey Simon Arnold & White, LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone:  (415) 848-4900
Facsimile:   (415) 848-4999
Email:         cheriank@howrey.com
Email:         mathiowetzd@howrey.com
Email:         changr@howrey.com
Attorneys for Plaintiff
O2 MICRO INTERNATIONAL LIMITED

**CERTIFICATE OF SERVICE**

I do hereby certify that a true and correct copy of the foregoing document has been sent to the following counsel of record on February 24, 2006.

Eric M. Albritton
Albritton Law Firm
P.O. Box 2649
Longview, Texas 75606
Tel:    903-757-8449
Fax:    903-758-7397
eric@albrittonlawfirm.com

Nathan Lane, III, Esq.
Joseph A. Meckes, Esq.
Squire, Sanders & Dempsey L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111
Tel:    415-954-0200
Fax:    415-393-9887
nlane@ssd.com
jmeckes@ssd.com

Philip J. McCabe, Esq.
Ronald E. Prass, Jr., Esq.
Kenyon & Kenyon
RiverPark Towers
333 W. San Carlos Street, Suite 600
San Jose, CA  95110
Tel:    408-975-7500
Fax:    408-975-7501
pmccabe@kenyon.com
rprass@kenyon.com

                              /s/ Duane H. Mathiowetz
                              Duane H. Mathiowetz